**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO.**

**RAISIN BANK AG,**
**a stock corporation (Aktiengesellschaft)**
**organized under the laws of the**
**Federal Republic of Germany,**

**Petitioner,**
**v.**

**TESSPAY FINANCE INC., a Delaware corporation, and JEFFREY F. MASON, an individual,**

**Respondents.**
______________________________________________/

## PETITION TO CONFIRM INTERNATIONAL ARBITRATION AWARD

Petitioner Raisin Bank AG ("RSB" or "Petitioner") files this petition to confirm the international arbitration final award entered in RSB's favor on June 29, 2026 ("Final Award"), as corrected by the Arbitral Tribunal's Correction of the Final Award dated August 11, 2026 ("Corrected Award"), against Tesspay Finance Inc. ("Tesspay" or "Respondent 1") and Jeffrey F. Mason ("Mason" or "Respondent 2") (and, together with Tesspay, "Respondents") and in support alleges as follows:

## I. PRELIMINARY INTRODUCTION

1. RSB seeks recognition of a final foreign arbitration award under the New York Convention. The Final Award was entered in RSB's favor by a validly constituted arbitral tribunal seated in Frankfurt am Main, Germany, following an arbitration in which Respondents were given full notice, appeared, and participated. Respondents have not paid the Final Award and, so far as the record shows, have not moved to set aside or suspend the Final Award in any jurisdiction.

None of the grounds to deny or delay recognition under the New York Convention are met in this case. Accordingly, the Final Award should be summarily confirmed.

## II. NATURE OF THE ACTION

2. This action is a summary proceeding to recognize and enforce a foreign arbitration award issued in Frankfurt am Main, Germany against a Delaware corporation that maintains its principal address in Miami, Florida, and against an individual who, upon information and belief, resides in Miami-Dade County, Florida.

3. The action is brought pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 ("New York Convention" or "Convention"), and Chapter 2 of the Federal Arbitration Act, 9 U.S.C. §§ 201-208 ("FAA").

4. The arbitral award at issue, the Final Award, as corrected by the Corrected Award, is a final, foreign commercial arbitration award issued in an arbitration proceeding ("Arbitration Proceeding"), DIS Case No. DIS-SV-2024-01079, conducted under the Arbitration Rules of the German Arbitration Institute (Deutsche Institution für Schiedsgerichtsbarkeit, "DIS") effective March 1, 2018 ("DIS Rules"), before a three-member Arbitral Tribunal seated in Frankfurt am Main, Germany. The Final Award and the Corrected Award are in the English language. True and correct copies of the Final Award and the Corrected Award are attached hereto as **Exhibit A** and **Exhibit A-1**, respectively.

5. The Final Award, as corrected by the Corrected Award, orders Respondents, jointly and severally (except as otherwise noted), to pay RSB a total in excess of EUR 3.5 million, including: (i) EUR 2,512,052.47 plus EUR 214,696.06 in interest under the Partial Settlement Agreement; (ii) EUR 845,494.62 plus interest at five percentage points above the Deutsche Bundesbank base rate (Basiszinssatz) from August 20, 2025 until paid, on the Sify warranty claim;

(iii) EUR 23,083.53 plus interest at five percentage points above the Bundesbank base rate from August 21, 2025 until paid, for legal costs incurred in connection with the Partial Settlement Agreement; (iv) an order that Respondent 1 alone ensure the provision of specified security in RSB's favor; (v) EUR 16,985.11 in pre-arbitration legal costs plus interest at five percentage points above the Bundesbank base rate from September 1, 2024 until paid; and (vi) EUR 284,293.71 in arbitration costs and RSB's legal fees. **Ex. A**, Final Award, Decision; **Ex. A-1**, Corrected Award.

6. In accordance with the express mandate of the U.S. Congress and the obligations the U.S. assumed under the New York Convention, this Court must confirm the Final Award unless one of the limited grounds to refuse recognition or enforcement under the Convention is met. 9 U.S.C. § 207.

7. None of the grounds to deny or delay recognition or enforcement under Article V of the New York Convention are met in this case. Respondents received due notice of the Arbitration Proceeding and the constitution of the Arbitral Tribunal, and they fully participated on the merits, including by filing a Statement of Defense, a Preliminary Objection to Jurisdiction, and a Rejoinder, and by expressly agreeing to waive any oral or evidentiary hearing. The Arbitral Tribunal considered and rejected Respondents' jurisdictional objection and their substantive defenses. Accordingly, pursuant to the New York Convention, the Final Award should be confirmed summarily.

## III. THE PARTIES

8. Petitioner RSB is a stock corporation (Aktiengesellschaft) organized and existing under the laws of the Federal Republic of Germany, with its registered office at Niedenau 61-63, 60325 Frankfurt am Main, Germany.

9. Respondent Tesspay is a corporation organized under the laws of the State of Delaware. Tesspay. Its principal address is 1221 Brickell Avenue, Suite 900, Miami, Florida 33131, which is located in Miami-Dade County, Florida.

10. Respondent Mason is an individual and a Florida resident. Mason's current residential address is unknown. Upon information and belief, Mason resides in Miami-Dade County, Florida. Mason is Tesspay's managing director and personally guaranteed the obligations at issue in this action as a self-obligor surety (selbstschuldnerische Bürgschaft). Both Respondents were self-represented by Mason throughout the Arbitration Proceeding.

## IV. JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to federal question jurisdiction, 28 U.S.C. § 1331, and 9 U.S.C. § 203, which provides that an action or proceeding "falling under the [New York] Convention shall be deemed to arise under the laws and treaties of the United States [and] [t]he district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." 9 U.S.C. § 203; *see also EGI-VSR, LLC v. Coderch Mitjans*, 963 F.3d 1112, 1120 (11th Cir. 2020); *Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1441 (11th Cir. 1998).

12. This Court has general *in personam* jurisdiction over Respondents. Tesspay is a Delaware corporation that maintains its principal address at 1221 Brickell Avenue, Suite 900, Miami, Florida 33131, within this District. Mason is a Florida resident who, upon information and belief, resides in Miami-Dade County, Florida, within this District. Personal jurisdiction and venue for actions to confirm foreign arbitral awards are proper wherever the FAA's venue provisions permit, including a respondent's district of residence or principal place of business. 9 U.S.C. § 204.

13. Venue in this action properly lies in this District pursuant to 9 U.S.C. § 204 and 28 U.S.C. § 1391(b)(1) because Respondents are both residents of the State of Florida, Respondent Tesspay maintains its principal address at 1221 Brickell Avenue, Suite 900, Miami, Florida 33131, and Respondent Mason, upon information and belief, also resides in Miami-Dade County, Florida.

## V. BACKGROUND

### A. *Arbitrability of Petitioner's Claims and the Arbitration Clause*

14. The dispute underlying the Final Award arose out of a Framework Purchase Agreement (Rahmenankaufsvertrag) dated September 21, 2023, between RSB and TessPay Services AG for RSB's purchase, on a true-sale, non-recourse basis, receivables from trade and service relationships that TessPay Services AG had itself acquired by factoring from its customers. Final Award ¶ 75. In connection with the Framework Purchase Agreement, Tesspay issued a Guarantee Letter (Garantieerklärung) dated September 28, 2023, in RSB's favor, irrevocably and unconditionally guaranteeing, as its own obligation, TessPay Services AG's warranties under the Framework Purchase Agreement, including as to the legal existence, absence of set-off, and assignability of the purchased receivables. *Id.* ¶ 78.

15. Receivables purportedly owed to TessPay Services AG by Telefónica Global Solutions S.L.U. and by Sify Technologies Pte. Limited, and purchased by RSB, proved to be non-existent or unassignable, giving rise to RSB's claims against Tesspay and TessPay Services AG under the Framework Purchase Agreement and the Guarantee Letter. Final Award ¶¶ 85–102.

16. On August 2, 2024, RSB, Tesspay, and TessPay Services AG entered into a Partial Settlement Agreement ("Partial Settlement Agreement"), attached hereto as **Exhibit B**, under which Tesspay and TessPay Services AG agreed, jointly and severally, to repay RSB EUR 2,512,052.47 in installments, plus EUR 214,696.06 in contractual interest, and to provide specified

security, including a personal guaranty from Mason, a limited-recourse guaranty from Ryan H.J. Platt, and share pledges from Mason, Platt, and Bruno Liberato in TessPay Inc. Final Award ¶ 103. Mason personally and severally guaranteed performance of Tesspay's and TessPay Services AG's obligations as a self-obligor surety (selbstschuldnerische Bürgschaft) by signing the Partial Settlement Agreement. *Id.* ¶ 79; *see also* Ex. B ¶¶ 1, 4.

17. Clause 8 of the Partial Settlement Agreement contains an arbitration clause ("Arbitration Clause") providing that all disputes arising out of or in connection with the Partial Settlement Agreement shall be finally settled under the DIS Rules by a three-member arbitral tribunal seated in Frankfurt am Main, Germany, with English and German as the languages of arbitration and German law as the substantive law. Final Award ¶ 58. Clause 8.3 expressly extends the Arbitration Clause to the Framework Purchase Agreement and the Guarantee Letter, superseding the court-jurisdiction clauses contained in those agreements. *Id.*

18. On August 8, 2024, RSB, Tesspay, and TessPay Services AG also entered into an Amendment to Framework Purchase Agreement ("Amendment"), attached hereto as **Exhibit C**, which likewise contains a DIS arbitration clause and was signed by Mason (together with Platt and Liberato) for the purposes of the clause addressing personal guaranty and share pledge obligations only. Final Award ¶¶ 114–116.

**B. *The Arbitration Proceeding***

19. RSB commenced the Arbitration Proceeding on October 18, 2024, by filing a Request for Arbitration against Respondents with the DIS. Final Award ¶ 2.

20. The Arbitration Proceeding followed Tesspay's default on the first installment of EUR 500,000 due under the Partial Settlement Agreement by August 31, 2024, and Respondents' failure to post the security required by clauses 4 and 5 of the Partial Settlement Agreement by

August 15, 2024, either of which independently triggered acceleration of the full outstanding amount, plus interest, under clauses 3.1 and 3.2 of the Partial Settlement Agreement. Final Award ¶ 223.

21. Respondents received notice of the Arbitration Proceeding and were given the opportunity to appoint a co-arbitrator in accordance with the DIS Rules. Final Award ¶¶ 4–5. Respondents did not exercise that opportunity. *Id.* ¶ 11.

22. As a result, the DIS appointed the Arbitral Tribunal, which was composed of Tanja V. Pfitzner as Presiding Arbitrator and Piet Bubenzer and Robert Whitener as Co-Arbitrators, constituted in accordance with the DIS Arbitration Rules effective March 1, 2018 ("DIS Rules"). Final Award ¶¶ 17–23.

23. Respondents thereafter fully participated in the Arbitration Proceeding on the merits, including by filing a Statement of Defense dated September 18, 2025. Final Award ¶ 46.

24. Respondents also filed a Preliminary Objection to Jurisdiction challenging the Arbitral Tribunal's jurisdiction over RSB's claim arising from the non-existent or unassignable Sify receivables (the "Sify claim"). Final Award ¶ 46.

25. Respondents filed a Rejoinder dated November 2, 2025, further addressing the merits and their jurisdictional objection. Final Award ¶ 53.

26. The Arbitral Tribunal considered and rejected Respondents' jurisdictional objection, holding, based on clause 8.3 of the Partial Settlement Agreement—which extends the Arbitration Clause to the Framework Purchase Agreement and the Guarantee Letter and supersedes the court-jurisdiction clauses contained in those agreements—that it had jurisdiction over all six of RSB's claims and over both Respondents. Final Award ¶¶ 189–200, 219.

27. Both parties expressly waived any oral or evidentiary hearing in the Arbitration Proceeding, and the proceedings were declared closed by Procedural Order No. 9 on December 19, 2025. Final Award ¶¶ 28, 54.

28. The Arbitral Tribunal considered and rejected Respondents' substantive defenses that the Partial Settlement Agreement was voidable for duress or deceit under Section 123 of the German Civil Code (Bürgerliches Gesetzbuch, "BGB") (a defense the Tribunal also found time-barred), void as contrary to public policy under Section 138 BGB, or subject to adjustment or termination under Section 313 BGB. Final Award ¶¶ 228–252.

29. The Arbitral Tribunal likewise rejected Respondents' defenses of impossibility and breach of the duty of good faith under Sections 275 and 242 BGB, respectively. Final Award ¶¶ 253–257.

**C. *The Final Award and Corrected Award***

30. On June 29, 2026, the Arbitral Tribunal issued the Final Award, a reasoned decision that fully and finally disposed of all six claims before it. As discussed below, the Arbitral Tribunal subsequently issued the Corrected Award on August 11, 2026, to correct certain clerical and typographical errors.

31. The Arbitral Tribunal decided and ordered as follows:

> 1. Respondents shall pay to Claimant, jointly and severally, EUR 2,512,052.47 plus interest of EUR 214,696.06, under the Partial Settlement Agreement.
>
> 2. Respondents shall pay to Claimant, jointly and severally, EUR 845,494.62 plus interest at five (5) percentage points above the Deutsche Bundesbank base rate (Basiszinssatz) from 20 August 2025 until paid, on the Sify warranty claim.
>
> 3. Respondents shall pay to Claimant, jointly and severally, a further EUR 23,083.53 plus interest at five (5) percentage points above the

> Bundesbank base rate from 21 August 2025 until paid, for legal costs incurred in connection with the Partial Settlement Agreement.
>
> 4. Respondent 1 (Tesspay) alone shall ensure that the security specified in clauses 4 and 5 of the Partial Settlement Agreement is provided in Claimant's favor, namely: (i) a personal guarantee from Jeffrey F. Mason; (ii) a limited-recourse personal guarantee from Ryan H.J. Platt; (iii) a pledge of Mason's shares in TessPay Inc.; (iv) a pledge of Platt's shares in TessPay Inc.; and (v) a pledge of Bruno M.S. Liberato's shares in TessPay Inc.
>
> 5. Respondents shall pay to Claimant, jointly and severally, EUR 16,985.11 in pre-arbitration legal costs plus interest at five (5) percentage points above the Bundesbank base rate from 1 September 2024 until paid.
>
> 6. Respondents shall pay to Claimant, jointly and severally, EUR 284,293.71 in arbitration costs and legal fees (comprising EUR 182,053.80 in arbitration costs -- the arbitrators' fees and expenses and the DIS administrative fees -- and EUR 102,239.91 in Claimant's reasonable legal costs), both costs having been shifted in full to Respondents because Claimant prevailed on Claims 1 through 5 and Respondents' jurisdictional objection and defenses were rejected.
>
> 7. All other claims and requests are rejected.

***Ex. A***, Final Award, Decision, *as corrected by* ***Ex. A-1***, Corrected Award.

32. On August 11, 2026, the Arbitral Tribunal issued the Corrected Award pursuant to Article 40 of the DIS Rules to correct clerical and typographical errors in the Final Award. The corrections included: (i) correcting Respondent 2's middle initial from "M" to "F" (i.e., from "Jeffrey M. Mason" to "Jeffrey F. Mason"); (ii) updating the Respondents' addresses to reflect changed addresses provided by Respondents during the transmission process; and (iii) correcting the value added tax calculations for Co-Arbitrator Robert Whitener, who determined that he would not charge value added tax pursuant to Section 19 of the German Value Added Tax Act (UStG). A true and correct copy of the Corrected Award is attached hereto as **Exhibit A-1**.

33. As a result of the corrections to the VAT calculations, the Corrected Award reduced the total arbitration costs from EUR 188,005.92 to EUR 182,053.80 and correspondingly reduced the total costs and legal fees payable by Respondents from EUR 290,245.83 to EUR 284,293.71.

The corrections do not affect the substance of the Arbitral Tribunal's findings or conclusions but merely correct clerical, typographical, and computational errors.

34. Pursuant to the DIS Rules and the mandatory procedural law of the seat, the Final Award, as corrected by the Corrected Award, is final and binding on the parties. Nothing in the record before RSB indicates that Respondents have moved to set aside or suspend the Final Award or the Corrected Award before the courts of Frankfurt am Main or any other competent authority.

35. The total amount in dispute before the Arbitral Tribunal was EUR 3,595,326.68, and the Arbitral Tribunal rejected all of Respondents' claims and requests not expressly granted in the Final Award.

36. Accordingly, pursuant to the express language of the Arbitration Clause contained in the Partial Settlement Agreement, the DIS Rules, and the Final Award and Corrected Award themselves, there are no further proceedings to be had relating to the Final Award or the Corrected Award. The Final Award, as corrected by the Corrected Award, should be confirmed without delay by this Court in favor of RSB.

## VI. **ARGUMENT**

### A. ***The New York Convention Governs this Petition***

37. The New York Convention and Chapter 2 of the FAA govern this petition because the Final Award is a foreign commercial arbitral award rendered in Germany, and RSB seeks to recognize and enforce it in the United States. Both Germany and the United States are Contracting States to the Convention.

38. Section 202 of the FAA provides:

> An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, **falls under** the **Convention**. An agreement or award arising out of such a

> relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states.

9 U.S.C. § 202 (emphasis added). Germany ratified the New York Convention on June 30, 1961, and the Convention entered into force for the United States, pursuant to the FAA's implementing legislation, on December 29, 1970. Both countries are Contracting States.

39. Article I of the New York Convention provides that it applies to arbitral awards "made in the territory of a State other than the State where the recognition and enforcement of such awards are sought." New York Convention, art. I(1). The Final Award was made in Frankfurt am Main, Germany, and RSB seeks recognition and enforcement of the Final Award in the United States.

40. Further, the Final Award is an "arbitral award arising out of a legal relationship . . . which is considered as commercial" and therefore falls squarely within the scope of the New York Convention. *See* 9 U.S.C. § 202. Section 202 of the FAA (9 U.S.C. § 202) provides that all arbitration awards arising out of commercial relationships that are not purely domestic "fall under the Convention." *Indus. Risk*, 141 F.3d at 1440.

41. Here, RSB is a German corporation, Tesspay is a Delaware corporation that maintains its principal address in Florida, and Mason is a Florida resident; the Final Award was rendered in Germany; and the underlying dispute—concerning breach of a negotiated settlement agreement and related guarantees arising from a factoring relationship—is commercial in nature.

42. The Final Award therefore falls under, and this petition is properly brought pursuant to, the New York Convention and Chapter 2 of the FAA, 9 U.S.C. §§ 201-208.

### B. *Standard of Review for Recognition and Enforcement of International Arbitration Awards Under the New York Convention*

43. The New York Convention provides that covered awards must be confirmed, except on very specific and limited grounds. This Court cannot review the Arbitral Tribunal's decision on the merits or deny recognition or enforcement on that basis. The showing required to deny enforcement is high, and the burden is on Respondents.

44. Section 207 of the FAA provides that a court "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207; *see Corporacion AIC, SA v. Hidroelectrica Santa Rita S.A.*, 66 F.4th 876, 882 (11th Cir. 2023).

45. Proceedings to recognize and enforce foreign arbitral awards under 9 U.S.C. § 207 are summary in nature. *Empresa De Telecommunicaciones De Bogota S.A. E.S.P. v. Mercury Telco Group, Inc.*, 670 F. Supp. 2d 1357, 1361 (S.D. Fla. 2009). Such proceedings are "not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmation [ ] or grounds for refusal to confirm." *Chelsea Football Club Ltd. v. Mutu*, 10-cv-24028, 2012 WL 463932 (S.D. Fla. Feb. 13, 2012) (confirming award of Court of Arbitration for Sport seated in Switzerland in favor of Chelsea Football Club) (quoting *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007) (citation omitted)).

46. The "showing required to avoid summary confirmation is high," *Ottley v. Schwarzberg*, 819 F.2d 373, 376 (2d Cir. 1987), and the burden of establishing the requisite factual predicate to deny confirmation of an arbitral award rests with the party resisting confirmation. *See Imperial Ethiopian Gov't v. Baruch–Foster Corp.*, 535 F.2d 334, 336 (5th Cir. 1976); *Empresa De Telecommunicaciones*, 670 F. Supp. 2d at 1361; *see also* New York Convention, article V(1) ("Recognition and enforcement of the award may be refused, ***at the request of the party against***

***whom it is invoked***, only ***if*** that party ***furnishes*** to the competent authority ... proof that" one of the enumerated grounds exists) (emphasis added).

47. The principal purpose underlying the New York Convention is to encourage the recognition and enforcement of foreign arbitral awards and to unify the standards by which such awards are enforced among Contracting States. In accordance with this purpose, an award under the New York Convention is "subject only to minimal standards of domestic judicial review." *Indus. Risk Insurers*, 141 F.3d at 1440 (citation omitted).

48. Any additional grounds for vacating an arbitration award as may be contained in Chapter One of the FAA are strictly inapplicable. *See id.* at 1446 ("In short, the Convention's enumeration of defenses is exclusive").

49. Respondents bear both the burden of proof and the burden of persuasion to make a convincing showing that one of the limited grounds for not recognizing or enforcing the Final Award applies. *See Empresa De Telecommunicaciones*, 670 F. Supp. 2d at 1361 ("The burden of proof is on the party defending against enforcement of the arbitral award.") (internal citations and quotations omitted); *Czarina, L.L.C. v. W.F. Poe Syndicate*, 358 F.3d 1286, 1292 n.3 (11th Cir. 2004) ("The proponent of the award is required only to supply the original or a certified copy of the award and the arbitral agreement. These establish a prima facie case, and the burden shifts to the defendant to establish the invalidity of the award on one of the grounds specified in Article V(1).") (citation omitted).

50. Moreover, defenses to recognition and enforcement under the New York Convention are construed narrowly, to encourage the recognition and enforcement of foreign arbitration agreements and awards, particularly given the Convention's "strong presumption in

favor of arbitration of international commercial disputes." *See Quiroz v. MSC Mediterranean Shipping Co. S.A.*, 522 F. App'x 655, 661 (11th Cir. 2013).

**C. *None of the Specified Grounds for Refusal or Deferral of Recognition and Enforcement Under Article V(1) or (2) of the New York Convention Applies***

51. None of the exclusive, limited grounds to deny recognition or enforcement under Article V of the New York Convention applies here. As set forth above, Respondents received due notice of the Arbitration Proceeding and the constitution of the Arbitral Tribunal, fully participated on the merits, and had their jurisdictional and substantive defenses considered and rejected by the Arbitral Tribunal. The Final Award must be confirmed.

52. **Article V(1)(a)—Incapacity or Invalid Arbitration Agreement.** There is no suggestion that Respondents lacked capacity to enter into the Partial Settlement Agreement, the Framework Purchase Agreement, or the Amendment, or that the Arbitration Clause is invalid. To the contrary, the Arbitral Tribunal found that clause 8 of the Partial Settlement Agreement—extended by clause 8.3 to the Framework Purchase Agreement and the Guarantee Letter—together with the parallel arbitration clause in the Amendment, validly bound both Respondents as to all six of RSB's claims. Final Award ¶¶ 189–200, 219.

53. **Article V(1)(b)—Improper Notice or Inability to Present One's Case.** Respondents received notice of the commencement of the Arbitration Proceeding and the opportunity to appoint a co-arbitrator, and they fully participated by filing a Statement of Defense, a Preliminary Objection to Jurisdiction, and a Rejoinder. Final Award ¶¶ 4–5, 11, 46, 53. Both parties expressly waived any oral or evidentiary hearing, foreclosing any claim that Respondents were denied a full opportunity to present their case. *Id.* ¶ 28.

54. **Article V(1)(c)—Award Exceeds the Scope of the Submission.** The Final Award addresses only the six claims properly submitted to the Arbitral Tribunal. The Tribunal expressly

considered and rejected Respondents' jurisdictional objection to the Sify claim, Final Award ¶¶ 182–219, and in its dispositive ruling rejected "all other claims and requests" not expressly granted—confirming that the Tribunal remained within the bounds of the parties' submissions. *Id.*, Decision ¶ 7.

55. **Article V(1)(d)—Improper Composition of the Tribunal or Procedure.** The Arbitral Tribunal was composed of three arbitrators in accordance with the DIS Rules, the arbitration rules the parties agreed to in clause 8.1 of the Partial Settlement Agreement, after Respondents declined to exercise their opportunity to appoint a co-arbitrator. Final Award ¶¶ 11, 17–23. The Arbitration Proceeding was conducted under the DIS Rules and the mandatory procedural law of the seat, Frankfurt am Main, Germany, with both parties afforded a full opportunity to brief the merits and expressly agreeing to forgo an oral hearing. *Id.* ¶ 28.

56. **Article V(1)(e)—Award Not Yet Binding or Set Aside.** The Final Award, as corrected by the Corrected Award, is final and binding under the DIS Rules and the parties' Arbitration Clause. Final Award ¶ 54. Nothing in the record before RSB indicates that Respondents have applied to set aside or suspend the Final Award or the Corrected Award before the courts of Frankfurt am Main or any other competent authority.

57. **Article V(2)(a)—Non-Arbitrability.** The dispute underlying the Final Award—the enforcement of a commercial settlement agreement, related guarantees, and security obligations—is readily arbitrable under U.S. law. U.S. law strongly favors arbitration of commercial disputes, a "federal policy [that] applies with special force in the field of international commerce." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985). There is no question that a dispute over breach of a commercial settlement agreement, related guarantees, and security obligations is capable of settlement by arbitration under U.S. law.

58. **Article V(2)(b)—Public Policy.** Recognition and enforcement of the Final Award would not be contrary to United States public policy. The public policy defense is to be "construed narrowly" and applies only to "violations of an 'explicit public policy' that is 'well-defined and dominant' and is ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *Cvoro v. Carnival Corp.*, 941 F.3d 487, 496 (11th Cir. 2019) (internal citations omitted).

59. The Final Award simply enforces a negotiated commercial settlement agreement and related guarantees and security arrangements; nothing about its recognition or enforcement offends the United States' most basic notions of morality and justice. "The general pro-enforcement bias informing the [New York] Convention . . . points to a narrow reading of the public policy defense." *Parsons & Whittemore Overseas Co. v. Société Générale de l'Industrie du Papier (RAKTA)*, 508 F.2d 969, 974 (2d Cir. 1974).

60. In sum, none of the seven grounds set forth in Article V(1)(a)-(e) or Article V(2)(a)-(b) of the New York Convention—the exclusive grounds on which this Court may refuse to recognize and enforce the Final Award—applies here.

61. Moreover, federal courts, including the Eleventh Circuit, have rejected frivolous arguments opposing confirmation of arbitration awards. *See B.L. Harbert Int'l, LLC v. Hercules Steel Co.*, 441 F.3d 905, 913-14 (11th Cir. 2006) (upholding confirmation of arbitration award and considering sanctions for frivolous arguments opposing confirmation) *abrogated on other grounds by Frazier v. CitiFinancial Corp.*, 604 F.3d 1313 (11th Cir. 2010); *see also DMA Int'l, Inc., v. Qwest Comms. Int'l Inc.*, 585 F.3d 1341, 1346 (10th Cir. 2009) (ordering lawyers for losing party to pay the prevailing party's attorneys' fees as sanctions for appealing the confirmation of an arbitral award without sufficient grounds).

62. RSB therefore is entitled to immediate recognition and enforcement of the Final Award, as corrected by the Corrected Award, under the New York Convention and respectfully requests that the Court enter judgment accordingly.

## VII. CONCLUSION

63. The grounds for a court to refuse to confirm a foreign arbitral award under the New York Convention are extremely narrow, and the burden of proof is extremely high. None of the grounds to deny recognition or enforcement exists here, and the Final Award, as corrected by the Corrected Award, should be confirmed expeditiously.

64. RSB therefore requests that this Court enter a judgment:

a. Recognizing and enforcing the Final Award, as corrected by the Corrected Award, rendered against Respondents pursuant to the New York Convention and 9 U.S.C. §§ 201-208;

b. Awarding the Petitioner, jointly and severally against both Respondents, all monetary amounts awarded to it in the Final Award, together with post-award, pre-judgment interest, and post-judgment interest at the applicable rates, as follows:

i. EUR 2,512,052.47 plus EUR 214,696.06 in interest, under the Partial Settlement Agreement;

ii. EUR 845,494.62, plus interest at five (5) percentage points above the Deutsche Bundesbank base rate from August 20, 2025, until paid, on the Sify warranty claim; and

iii. EUR 23,083.53, plus interest at five (5) percentage points above the Bundesbank base rate from August 21, 2025, until

paid, for legal costs incurred in connection with the Partial Settlement Agreement;

iv. EUR 16,985.11 in pre-arbitration legal costs, plus interest at five (5) percentage points above the Bundesbank base rate from September 1, 2024, until paid; and

v. EUR 284,293.71 in arbitration costs and legal fees;

c. Confirming and directing enforcement of the Final Award's order that Respondent Tesspay alone ensure the provision of the security specified in clauses 4 and 5 of the Partial Settlement Agreement, namely: (i) a personal guarantee from Jeffrey F. Mason; (ii) a limited-recourse personal guarantee from Ryan H.J. Platt; (iii) a pledge of Mason's shares in TessPay Inc.; (iv) a pledge of Platt's shares in TessPay Inc.; and (v) a pledge of Bruno M.S. Liberato's shares in TessPay Inc.;

d. Retaining jurisdiction over this matter through the entry of any judgment and to issue any and all orders necessary for Petitioner to enforce its judgment against Respondents; and

e. Granting any such further relief as the Court may deem just and proper.

Dated: August 24, 2026.

Respectfully submitted,

HOLLAND & KNIGHT LLP

By: /s/ *Brian A. Briz*

Brian A. Briz
Florida Bar No. 657557
Adolfo E. Jimenez
Florida Bar No. 869295
Jenifer J. Norwalk
Florida Bar No. 1032053
HOLLAND & KNIGHT LLP
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
Telephone: (305) 374-8500
Facsimile: (305) 789-7799
E-mail: Brian.Briz@hklaw.com
E-mail: Adolfo.Jimenez@hklaw.com
E-mail: Jenifer.Norwalk@hklaw.com